# IN THE UNITED STATES DISTRIC COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

STEVEN L. MASON,          )
                       )

      Petitioner,        )         NO. 1:04-000112

                       )         JUDGE HAYNES

v.                         )
                       )

STATE OF TENNESSEE,     )
                       )

      Respondent.     )

## M E M O R A N D U M

Petitioner, Steven L. Mason, filed this action under 28 U.S.C. § 2254 seeking the writ of

habeas corpus to set aside his conviction of first degree murder and attempted first degree

murder, for which he received respectively a life sentence of life and a consecutive sentence of

sixty (60) years. In earlier proceedings, the Court denied the Respondent's motion for summary

judgment without prejudice and appointed counsel to represent the Petitioner and an amended

petition for writ of habeas corpus was filed. (Docket Entry No. 40). In his amended petition,[1]

Petitioner presents the following claims:

---

[1] In his initial petition, Petitioner asserted the following claims:

     A.  Counsel attempted to force the Petitioner to accept a plea offer;
     B.  Counsel brought in the Petitioner's father to help persuade the Petitioner to accept
         the plea offer;
     C.  Counsel tried to tell the Petitioner what to do;
     D.  Counsel was in a position contrary to that of the Petitioner, creating a conflict of
         interest between the Petitioner and his attorney;
     E.  Counsel performed unprofessionally without the Petitioner's best interest in mind;
     F.  Counsel showed a lack of interest in her responsibility to adequately represent the
         Defendant, complaining about have to awake early for trial preparations;
     G.  Counsel allowed the bulk of the trail to be conducted by her inexperienced assistant.

(Docket Entry No. 1 at 5, 8). The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v.
Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the
filing of an amended complaint supersedes the prior complaint. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th
Cir. 1986). Thus, the Court deems the amended petition to supersede the pro se petition and the claims therein.
Unless adopted and supported by legal memorandum, the Court deems those claims to be waived.

1.     Petitioner's trial counsel failed to provide effective assistance on Petitioner's decision to testify and to prepare Petitioner for his trial testimony and cross-examination.

2.     Petitioner's trial counsel failed to prepare for an effective cross-examination of prosecution witnesses.

3.     Petitioner's trial counsel failed to demand a curative instruction about Petitioner's parole status at the time of the offense.

4.     Petitioner's trial counsel was ineffective for permitting Petitioner to appear before the jury in his prison clothes.

5.     Petitioner's trial counsel failed to cross-examine prosecution witnesses effectively.

6.     Petitioner's trial counsel failed to present key witnesses to rebut or impeach the testimony of prosecution witnesses.

7.     Petitioner's trial counsel was ineffective in objecting to the trial court's convictions involving similar facts.

8.     The cumulative effect of counsel's errors undermined any confidence that Petitioner received a fair trial.

9.     The State's evidence was insufficient for Petitioner's first degree murder or attempted first degree murder convictions.

(Docket Entry No. 40 at 16-17, 19-20, 22 and 26).

Before the Court is the Respondent's renewed motion for summary judgment (Docket Entry No. 41) contending, in sum: that the State courts' determinations about Petitioner's trial counsel's effective assistance and the sufficiency of the State's evidence were reasonable and that Petitioner's remaining claims are procedurally defaulted. In response, Petitioner asserts that the State court's determinations were unreasonable and that the claims in his amended petition are not defaulted.

## A. Review of the State Record

On Petitioner's direct appeal, the Tennessee Court of Criminal Appeals set forth the following findings of fact[2] underlying Petitioner's convictions.

> On August 4, 1994, Timothy McGill and Jesse Tate Jones were shot numerous times following a crap game which took place on Broadway Avenue in Mt. Pleasant. McGill suffered three gunshot wounds and died from these injuries. Jones, McGill's stepfather, was shot twice. After surgery and hospitalization, he recovered fully and suffered no permanent injuries. Jones and other eyewitnesses identified appellant as the assailant. Several days after the incident, appellant turned himself in to authorities in Louisville, Kentucky and was returned to this State for prosecution.
>
> The State's proof demonstrated that shooting dice, or "craps" as it is commonly called, was played regularly in and around the Broadway Avenue area of Mt. Pleasant. The location is a "high crime area." On the evening of August 3, 1994, a game began at about 8:00 p.m. and continued well into the morning hours of August 4, concluding around 3:00 a.m. The victims were in control of the game, at least one of them acting as "houseman" of the game at all times. The "houseman" is the person who supplies the dice and oversees the betting. Throughout the evening, the game had varying numbers of participants, including as many as twelve people at one point. Appellant arrived on Broadway around 11:00 p.m. and remained until the game's conclusion, but he only participated in the game for a short while. He left the area once around 2:00 a.m. and was gone for about 20 to 30 minutes. Upon his return, those present at the game noticed that appellant had changed clothes. Prior to leaving, appellant had been dressed in light-colored clothing, primarily a white T-shirt and white pants, When he returned, he was dressed in all black, including his shoes, shorts, shirt and jacket.
>
> The testimony of Jesse Tate Jones, the surviving victim, revealed that appellant was present as the game began to draw to a close. Anthony Webster, appellant's roommate and friend, had just lost a sum of money and declined to play the game any longer. Jones urged Webster to continue playing. Webster responded that he might play again tomorrow. Jones replied, "It may not be no tomorrow." Appellant then jumped up from where he was sitting, pulled out a gun and said, "That's what I say, won't be no tomorrow." He then began firing the weapon. Appellant first shot Jones in the jaw, who fell facedown on the street. Appellant then turned the gun on McGill and shot him once in the upper portion of his chest, just below the neck. He immediately whirled back toward Jones and shot him again in the back of the neck, as Jones lay facedown on the street. By that time,

---

[2] State appellate court opinion findings can constitute factual findings in a habeas action. <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness. 28 U.S.C. § 2254(e).

McGill had fled on foot and was running down the street. Jones watched appellant chase after McGill, firing the pistol. Two shots struck McGill, one in the lower back and one near the upper arm. The men disappeared from Jones' sight.

By then, all the remaining participants had left the scene. Fortunately, Jones was able to walk to his truck parked nearby and drive the short distance to the police station. He reported the incident and was then taken to the hospital for treatment. Jones testified that no argument or cross words were exchanged prior to the shooting. He also stated that appellant's weapon looked like a .25 caliber automatic pistol.

The testimony of Terrence Williams and Vincent Wilson, who were both eyewitnesses to the shooting, substantiated the events detailed by Jones. Wilson added that he lost approximately $160 to McGill that night. He also stated that he had played the game for four or five hours that night and there had been no arguments or fights. Anthony Webster, appellant's roommate, testified in similar fashion. However, he stated that he and appellant did not arrive on Broadway until after 1:00 a.m. when they both got off work. He further explained that appellant lost $30 in the game and then borrowed money from him, which he also lost. It was then that appellant left and went home. He returned wearing the black clothing. Webster likewise denied that any argument occurred prior to the shooting.

Appellant's uncle by marriage, Vernon Johnson, Sr., also testified for the State. He reported that appellant appeared on his doorstep in the early morning hours of August 4, 1994. Appellant was very nervous and had a silver .25 caliber automatic pistol in his hands. He proceeded to tell Johnson that he had shot McGill and Jones. Appellant then asked Johnson to help him leave town. Johnson first declined, but was afraid for his family's safety and offered to take appellant wherever he needed to go. Johnson then took appellant to Columbia and left him there. He said that *en route,* they made one stop and appellant disposed of the gun at another person's home.

Law enforcement officials who investigated the crime scene discovered McGill's body on the sidewalk of Broadway Avenue in front of a funeral home, approximately 230 to 240 feet from the place where the shooting began. The body was found facedown on the pavement and the victim was dead when officials arrived. A pair of green shorts, later identified as McGill's, were found next to the body. The pockets contained cigarettes, a lighter, and 32 cents in change. McGill's flip flops were also recovered near the scene of the initial shooting. Bullet casings were found several feet from where the shooting began and one spent casing was also found on the porch of the funeral home. These were identified as having been fired from a .25 caliber firearm and all were fired from the same weapon. The medical examiner reported at trial that McGill died from loss of blood, primarily as a result of the first gunshot wound which pierced his right lung.

Mason, 1997 WL 311900, at *1-2. The other state court's factual findings will be presented in the context of Petitioner's claims.

### B. Conclusions of Law

This claim is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." In such instances, the Supreme Court held that a federal habeas court may grant a writ. Id. The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings as opposed to dicta" of its decisions at the time of the state court decision. Id. at 412. Moreover, the relevant analysis is "to apply a rule of law that was clearly established at the time the Petitioner's state court conviction became final." Id. at 390; accord Joshua v. DeWitt, 341 F.3d 430, 436 (6th Cir. 2003). In Bell v. Cone, 535 U.S. 685, 693 (2002), the Court reiterated that AEDPA modified a federal

court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, the Supreme Court stated that a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decision but unreasonably applies [that principle] to the facts of the particular case." Id. at 694. The district court "must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

### 1. Petitioner's Ineffective Assistance of Counsel Claims

In his original state post-conviction petition, Petitioner's claims were insufficiency of the evidence, ineffective assistance of counsel and withholding of exculpatory information without any specific facts about his trial counsel. (Docket Entry 43, Addendum 1 at 4, 6).

Petitioner also cites his pro se memorandum in support of his pro se petition that reflects the following statements about his trial counsel. "Given the other evidence which defense counsel knew or should have known there is at least a reasonable probability that the petitioner would have been convicted of second degree murder." (Docket Entry No. 14, Bates Stamp 20). "The Petitioner was prejudiced by the failure of his trial counsel to put on witnesses who could testify as to the petitioner's character for peacefulness and his demeanor." Id. at Bates Stamp 23. In his amended state post-conviction petition filed by his counsel, however, Petitioner's ineffective assistance claim in the state court was clarified as follows:

> Petitioner's right to effective assistance of counsel was violated due to
> Petitioner's counsel . . . claiming that she believed she and her staff were unable
> to work with Petitioner because Petitioner refused to accept her advice regarding

6

settlement/trial of the case  . . . . Counsel's representations of the Court showed that counsel had a conflicting interest in further representing Petitioner.

Id. at 37.

The Tennessee Court of Criminal Appeals made the following findings on this ineffective assistance claim:

> We first note that while the petitioner cites to a portion of the record reflecting his counsel's pre-trial request to withdraw her representation, the petitioner does not allege how his counsel performed deficiently or how, but for her deficient performance, the result of his trial would have been different. See Strickland, 466 U.S. at 694; Baxter, 523 S.W.2d at 936. Accordingly, the defendant has failed to meet the required burden for a grant of post-conviction relief. See Henley, 960 S.W.2d at 580.
>
> Moreover, while the petitioner alleges that his counsel's remarks indicate that she had a conflict of interest with regard to her representation of him, he has failed to prove that his counsel was "actively representing divergent interests." Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980) (holding that an accused must establish that his or her counsel was "actively representing divergent interests," that the conflict was actual, not hypothetical, and that the conflict of interest "adversely affected his [or her] lawyer's performance" in order to establish a constitutional deprivation). **While counsel announced that she would find a working relationship with the petitioner difficult based on his refusal to accept her legal advice, nothing in the record demonstrates that counsel abandoned her duty to zealously represent the petitioner during his trial. Without such a showing, the petitioner is not entitled to an assumption that he was prejudiced by his counsel's representation. See id.**
>
> **Thus, because the petitioner has failed to demonstrate prejudice and because this case does not warrant an assumption of prejudice, we find that the petitioner's allegation that he received ineffective assistance of counsel lacks merit.**

Mason, 2003 WL 22038785, at *7 (emphasis added).

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id. at 690-91.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691 (emphasis added). Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000 WL 712376, at *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams, 529 U.S. at 390-91. In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

The Sixth Circuit summarized Supreme Court precedents and identified two broad categories of ineffective assistance of counsel claims: (1) the actual or effective absence of counsel at a critical stage of the proceeding for which a presumption of prejudice arises; and (2)

9

counsel whose performance was deficient on specific issues and that deficiency was demonstrably prejudicial to the defendant. As the Sixth Circuit explained:

> In Cronic,[3] the Supreme Court held that an appeals court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." . . . In Williams,[4] the Supreme Court confirmed the vitality of this "per se" approach, noting that while the Strickland v. Washington, 466 U.S. 668 (1984), test for ineffective assistance of counsel, requiring proof of deficient performance and prejudice, provides guidance for resolving virtually all ineffective assistance of counsel claims, there are "a few situations in which prejudice may be presumed." We have recently applied the presumption-of-prejudice test to a claim of ineffective assistance of counsel.

Mitchell v. Mason, 325 F.3d 732, 740 (6th Cir. 2003)(citations and parenthetical omitted).

Within the first category are three types of cases warranting the presumption of prejudice arising from counsel's acts or omissions:

> The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at 'a critical stage.'" Bell, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659). The second is when counsel "'entirely fails to subject the prosecution's case to meaningful adversarial testing.'" Id. (quoting Cronic, 466 U.S. at 659). The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.

Id. at 742.

Given the state court's findings, Petitioner's claim does not fall within any of these categories and thus a "strong presumption" arises that petitioner's counsel provided reasonably effective assistance. Strickland, 466 U.S. at 689. Yet, Petitioner contends that when trial counsel is burdened with an actual conflict of interest, counsel "breaches the duty of loyalty, perhaps the most basic of counsel's duties." Strickland, 446 U.S. at 668, 692. Petitioner argues that prejudice from that breach is "presumed . . . if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected

---

[3] United States v. Cronic, 466 U.S. 648 (1984).
[4] Williams v. Taylor, 529 U.S. 362 (2000).

his lawyer's performance." Id. (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)) (internal quotation marks and citations omitted). Petitioner notes that this presumed prejudice due to a conflict was applied in United States v. Taylor, 657 F.2d 92 (6th Cir. 1981) and United States v. Stritt, 441 F.3d 297, 302-03 (4th Cir. 2006).

Here, Plaintiff had an evidentiary hearing during his State post-conviction proceedings, including on his claim of ineffectiveness assistance of his trial counsel based upon this conflict of interest contention. Before the state courts, Plaintiff did not provide any proof of actual prejudice attributable to his counsel's cited statements. Absent such proof of actual prejudice that is a requirement under Strickland, whatever presumption of prejudice arises from Petitioner's trial counsel's initial statements, that presumption was overcome by the state courts' findings on Petitioner's trial counsel's actual performance at trial. Issues of credibility are for the state courts and Petitioner has not demonstrated that the State courts' factual determinations on this claim are unreasonable. Thus, this claim cannot be ground for habeas relief.

### 2. Sufficiency of the Evidence Claim

For this clam, Petitioner contends, in sum, the following:

> Here, the record evidence could not reasonably support a finding beyond a reasonable doubt that [the petitioner] acted with the premeditation necessary for findings of first degree and attempted first degree murder. [The petitioner] should either . . . have been acquitted on the basis of his testimony regarding self defense, or should have been convicted of a lesser included offense, of either second degree murder or manslaughter.

(Docket Entry No. 40 at 27).

In Petitioner's direct appeal in the state courts, the State appellate court addressed this claim as follows:

> In evaluating the sufficiency of the evidence, we are compelled to consider the evidence in the light most favorable to the State. Jackson, 443 U.S. at 319. The State's theory of the case, credited by the jury's verdict, was that appellant formed

the intent to kill when he lost his money to the victims, which he believed was a result of their cheating. This proof of motive is relevant to an inference of premeditation and deliberation. Bordis, 905 S.W.2d at 222 (quoting 2 W. LaFave and A. Scott, Jr., Substantive Criminal Law § 7.7 (1986)). The State's theory was that appellant decided to murder the victims, went to his home, changed clothes to reduce the likelihood of detection, procured a firearm to accomplish the task, and then returned to the game. Facts about what the appellant did before the killing which show he was engaged in planning activity also support an inference of premeditation and deliberation. Id. See also Brown, 836 S.W.2d at 541 (recognizing that procuring a weapon to commit the homicide is circumstantial evidence of premeditation and deliberation).

Although no quantifiable time is necessary, it is apparent that appellant had ample time to reflect upon the intent to kill. At least twenty minutes passed after he obtained the gun and before he executed the plan. We also find that the killing was committed with a cool purpose. Although the appellant testified that he and McGill exchanged heated words, none of the eyewitnesses testified to such a disagreement. Their testimony reflected that appellant acted wholly without provocation. Moreover, appellant's conduct did not correlate with his theory of self-defense, thus yielding credence to the State's theory. While we cannot infer premeditation and deliberation from appellant's concealment of the weapon after the shooting, concealment does contradict the appellant's theory of self-defense by illustrating fear of detection. West, 844 S.W.2d at 151. Similarly, appellant's efforts to leave town to avoid law enforcement officials is contrary to a theory of self-defense. The jury's guilty verdict discredited appellant's theory and demonstrates the ample evidence supporting a finding of premeditation and deliberation. State v. Grace, 493 S.W.2d 474, 476 (Tenn.1973).

Mason, 1997 WL 311900, at * 7 (emphasis added).

To state a Fourteenth Amendment claim on insufficient evidence, the Supreme Court in

Jackson v. Virginia, 443 U.S. 307 (1979), set forth the standard for reviewing the legal

sufficiency of the evidence in support of a conviction.

...[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to `ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. <u>Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.</u> The criterion thus impinges upon `jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

<u>Id.</u> at 318-19 (emphasis added with footnotes and citations omitted). The Due Process Clause "forbids a State to convict a person of a crime without proving the elements of the offense beyond a reasonable doubt." <u>Fiore v. White</u>, 531 U.S. 225, 228-29 (2001).

A presumption of correctness obtains in determining whether there exists sufficient evidence to support a conviction. If any rational finder of fact would accept the evidence as establishing each essential element of the crime, the <u>Jackson</u> standard of review is satisfied. <u>Id.</u> at 324. The rule concerning reasonable inferences applies with equal force to historical facts. <u>Parke v. Raley</u>, 506 U.S. 20 (1992) (involving the challenge to a prior conviction that resulted in enhancement of a sentence).

Circumstantial evidence, if sufficient to establish an element of the offense, satisfies constitutional requirements of due process, <u>Wiley v. Sowders</u>, 669 F.2d 386, 390 (6th Cir. 1982) (<u>per curiam</u>), and such evidence need not remove every reasonable hypothesis except that of guilt. <u>Tilley v. McMackin</u>, 989 F.2d 222, 225 (6th Cir. 1993). Uncorroborated accomplice testimony is sufficient to support a conviction under the United States Constitution, <u>Takacs v. Engle</u>, 768 F.2d 122, 127 (6th Cir. 1985), but reliance on legislative presumptions to prove facts is insufficient. <u>Hicks v. Feiock</u>, 485 U.S. 624, 637-40 (1988). This due process guarantee of sufficiency of the evidence extends only to the elements of the crime, not to the state's burden to prove the absence of an affirmative defense, unless the state has made the absence of a defense

an element of the crime. See Allen v. Redman, 858 F.2d 1194, 1196-98 (6th Cir. 1988). At that point, sufficiency of evidence on the issue will be relevant. Id. at 1197-98.

Hearsay evidence can be used to support a state conviction provided it qualifies as an exception to the hearsay rule. White v. Illinois, 502 U.S. 346, 355-57, 356 n. 8 (1992). The standard is whether the hearsay evidence carries sufficient guarantees of trustworthiness. See Bourjaily v. United States, 483 U.S. 171, 181-84 (1987) (incriminating statement of nontestifying codefendant is admissible if it falls within a firmly rooted hearsay exception).

Here, Petitioner contends that the State did not prove that Petitioner acted with the "cool reflection" required under Tennessee law for a first degree murder conviction, citing State v. West, 844 S.W.2d 144 (Tenn. 1992); State v. Brown, 836 S.W.2d 530, 538-41 (Tenn. 1992); and Myers v. State, 1996 WL 667800 (Tenn. Ct. Crim. App Nov. 19, 1996), that interpret the 1995 amendment to Tennessee's first degree murder statute, Tenn. Code Ann. § 39-13-202(d) defining deliberate as "an act done after reflection and judgment." In West, the Tennessee Supreme Court cited the lack of proof that the defendant went to his residence to retrieve a weapon before shooting as failing to prove premeditation. Brown and Myers are cited as establishing that the infliction of multiple blows is insufficient to prove premeditation because such multiple blows can be inflicted as an act of passion.

Petitioner also challenges the State courts' assessment of the State's proof and its reasons for finding premeditation based upon: (1) The firing of a second shot at a victim who was laying on the sidewalk; (2) Petitioner's pursuit of a second victim for 200 feet after the initial shooting; (3) the state appellate court's conclusion that the shooting was "unprovoked," actually establishes the lack of provocation and cool reflection; and (4) that Petitioner's statement to a

14

friend before the shooting that there would not be any tomorrow is not evidence of Petitioner's prior planning.

Under <u>Jackson</u>, this Court must "view[] the evidence in the light most favorable to the prosecution." 443 U.S. at 319. Here, the State courts' factual findings reflect that Petitioner lost money during the craps game, was initially dressed in a white shirt and pants, left the craps game for 20 to 30 minutes and returned wearing all black clothing, including his shoes, at approximately 2:20 to 2:30 a.m. After a victim stated that there may not be a game tomorrow, Petitioner "jumped up from where he was sitting, pulled a gun" and stated "that what I say, won't be no tomorrow" and then began firing his gun that ultimately killed one victim and seriously wounded the second victim. Petitioner had a gun either during his initial presence or at his second appearance at the craps game. Petitioner's complete change of clothes before the shooting, the time between Petitioner's return to the scene and the shooting, and Petitioner's flight after the shooting, collectively, are facts consistent with planning to avoid detection after the shooting. Such facts can be reasonably viewed as planning and are consistent with a finding of premeditation. Thus, a jury could reasonably conclude that the killing was premeditated and the state courts could so reasonably conclude.

### 3. Defaulted Claims

As to Petitioner's remaining claims, Petitioner did not cite any specific facts about his counsel's failure to present witnesses at his state trial. Petitioner's counsel in the state post-conviction proceeding, elected to pursue only the conflict of interest aspect of the ineffective assistance of counsel claim.

Petitioner must exhaust all claims in state court before asserting those claims in a federal habeas action. <u>Wilwording v. Swenson</u>, 404 U.S. 249, 250 (1971). A habeas petitioner must

present claims to the state courts as federal constitutional issues rather than state law issues. Picard v. Connor, 404 U.S. 270, 275 (1971). The facts and federal legal theory raised in a petition for the federal writ of habeas corpus must have been "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam) (citing Picard and Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." "[A] federal habeas petitioner ... [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim.")). A claim supported only by citation to state law is insufficient to present a federal claim, even if the cited state decision restated an analysis of federal law. Harless, 459 U.S. at 7-8 n. 3. The state courts must be provided with a "fair opportunity" to apply controlling legal principles to the facts bearing upon the petitioner's constitutional claim. Id. at 6.

"[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). As a matter of federal law, to avoid procedural default, federal law requires a federal habeas petitioner in Tennessee to present his federal claims to the Tennessee Court of Criminal Appeals. Covington v Mills, 110 Fed. Appx. 663, 666 (6th Cir. 2004).

The "Procedural Default Doctrine" bars consideration of a federal claim in a habeas action that was not presented to the state court or was decided on state law grounds.

> This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any

independent federal ground for the decision could not affect the judgment and
would, therefore, be advisory. . .

***

. . . the doctrine applies also to bar federal habeas when a state court declined to
address a prisoner's federal claims because the prisoner had failed to meet a state
procedural requirement. In these cases, the state judgment rests on an
independent and adequate state procedural ground.

Coleman v. Thompson, 501 U.S. 722, 729-30 (1992) (emphasis added and citations omitted).

Yet, a presumption of no procedural default arises if the state court decision "fairly
appears to rest primarily on federal law, or to be interwoven with the federal law, and when the
adequacy and independence of [the] state law ground is not clear from the face of the opinion."
Id. at 735. Further, this doctrine applies only to "firmly established" and regularly followed state
procedural rules. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). Here, Respondent cites Tenn.
Code Ann. § 40-30-102 (a) and (c) that has a one year limitation period that has long since
passed for presenting any of this claim and State precedent on appellate waiver.

The standard analysis for procedural default was set forth by the Sixth Circuit in the oft-
cited Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986):

When a state argues that a habeas claim is precluded by the petitioner's failure to
observe a state procedural rule, the federal court must go through a complicated
analysis. First, the court must determine that there is a state procedural rule that is
applicable to the petitioner's claim and that the petitioner failed to comply with
the rule.

***

Second, the court must decide whether the state courts actually enforced the state
procedural sanction.

***

Third, the court must decide whether the state procedural forfeiture is an
"adequate and independent" state ground on which the state can rely to foreclose
review of a federal constitutional claim.... This question generally will involve an

examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.

Maupin, 785 F.2d at 138 (citations omitted).

### Noncompliance with Applicable State Rules

Any reliance on a state rule must be express, i.e., supported by citation to a state law or court rule as well as a showing of how the facts of the case violate that rule. Walker v. Engle, 703 F.2d 959, 966 (6th Cir. 1983). Respondent cites Tennessee's statute of limitations as barring these defaulted claims. Tenn. Code Ann. § 40-30-102(a) and (c). As to Petitioner's new claims in this action, if there is no state court determination of whether a petitioner's claims are procedurally defaulted under state law, then the Court is to consider whether the state court would bar the claims if presented to them. Engle v. Isaac, 456 U.S. 107, 125-26 n. 28 (1982). As discussed infra, the Court concludes that the Tennessee courts would conclude that these claims are time barred.

### "Firmly Established" and "Regularly Followed" State Rules

To qualify for the procedural default rule, the cited state law also must be a firmly established and regularly followed state practice. Ford, 498 U.S. at 423-24. In Hutchison v. Bell, 303 F.3d 720 (6th Cir. 2002), the Sixth Circuit analyzed Tennessee's statute of limitations statute on post-conviction petitions and its Burford exception in a procedural default analysis:

> Hutchison argues that Tennessee courts' willingness to excuse procedural default pursuant to Burford demonstrates that state procedural rules are not regularly followed in the context of later-arising claims.
>
> Nevertheless, we agree that Tennessee's due process exception does not render this provision inadequate. Tennessee's due process exception does not grant unfettered discretion to state courts in applying procedural default rules. Although Tennessee courts will often permit the hearing of an untimely claim, the decision is confined by the due process standards delineated in Burford and its progeny. The Tennessee courts consistently enforce a procedural scheme that encompasses both the one-year limitations period and a court-recognized

18

procedure for tolling that statute when specific due process grounds are presented....

> In Hannah v. Conley, 49 F.3d 1193 (6th Cir. 1995) (per curiam), this Court found that the then-applicable three-year statute of limitations for post-conviction petitions in Tennessee was regularly applied and would bar presentation of an unexhausted claim. Id. at 1197. The Hannah court noted that the language of the statute was mandatory in that it provided that a claimant "must" petition within three years or his claim "shall" be barred. Id. at 1196. The current one-year statute of limitations contains the same mandatory language. See T.C.A. § 40-30-202(a).

> Although the previous cases did not present a Burford type later arising claim, we do not find that the state's Burford tolling rules command a different result. . . .

> Given that tolling under Burford is not discretionary and given this Circuit's reluctance to discourage state courts from exhibiting caution before applying procedural default rules in capital cases, we conclude that the Burford exception does not render Tennessee's procedural rules inadequate.

Id. at 738-739. (footnotes omitted).

The Sixth Circuit also ruled in Hutchinson that despite the Burford exception to the Tennessee timeliness rule, Burford was not a separate constitutional claim. Id. at 740-41. In a word, Hutchinson found the Tennessee limitations rule to constitute a firmly established and regularly followed state law. Thus, the Court concludes that Tennessee's limitations statute is an independent and regularly enforced state rule.

## Adequacy of the State Rule

The Supreme Court recognized the following state interests as constituting adequate grounds for state procedural rules.

> The possible avoidance of an unnecessary trial or of a retrial, the difficulties of making factual determinations concerning grand juries long after the indictment has been handed down and the grand jury disbanded, and the potential disruption to the numerous convictions of finding a defect in a grand jury only after the jury has handed down indictments in many cases.

Coleman, 501 U.S. at 745-46.

Another reason to support a finding of adequate state rules was decided in <u>Frances v. Henderson</u>, 425 U.S. 536 (1976), where the Supreme Court enforced a state rule that promoted finality, noting a comparable federal rule.

> Plainly the interest in finality is the same with regard to both federal and state prisoners. ... There is no reason to ... give greater preclusive effects to procedural default by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.

425 U.S. at 541-42.

Procedural rules such as statutes of limitations have been found to be independent and adequate. In <u>Coleman</u>, the Supreme Court upheld a procedural rule that bars consideration of a federal claim for failure to meet state law requirements for timely appeals. 501 U.S. at 750-51. In <u>Brown v. Allen</u>, 344 U.S. 443, 485-86 (1953), the Court also applied the procedural default rule to a state rule that placed time limits on appellate rights. <u>Accord</u> <u>Reed v. Farley</u>, 512 U.S. 1277 (1994) (denying writ due to waiver of delay under the Interstate Agreement on Detainers by failure to object at trial and to establish prejudice). Moreover, State rules that failure to object at trial to preserve a claim are also adequate State rules. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87, 91 (1977).

The Court concludes that Tennessee's cited rules are adequate for procedural default purposes and are regularly enforced.

### Cause and Prejudice

Given these procedural defaults, Petitioner must establish cause and prejudice to excuse such non-compliance. The "cause" for the default must be external to the petitioner and must otherwise be attributable to the state.

> . . . <u>we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the</u>

> defense impeded counsel's efforts to comply with the State's procedural rule.
> Without attempting an exhaustive catalog of such objective impediments to
> compliance with a procedural rule, we note that a showing that the factual or legal
> basis for a claim was not reasonably available to counsel, see <u>Reed v. Ross</u>, 468
> U.S., at 16, or that `some interference by officials,' <u>Brown v. Allen</u>, 344 U.S. 443,
> 486 (1953), made compliance impracticable, would constitute cause under this
> standard.

<u>Carrier</u>, 477 U.S. at 488 (emphasis added).

An often cited factor to establish cause for a procedural default is the petitioner's state

counsel's failure to raise an issue or to comply with a state law to present a given habeas claim.

Inadequate counsel can prove cause, but only if counsel's conduct violates Sixth Amendment

standards and counsel's inadequate conduct has been presented to the state courts. The Supreme

Court emphasized in <u>Coleman</u> that mere attorney error cannot be cause and cannot be

attributable to the state.

> Attorney ignorance or inadvertence is not `cause' because the attorney is the
> petitioner's agent when acting, or failing to act, in furtherance of the litigation,
> and the petitioner must `bear the risk of attorney error.' ... Attorney error that
> constitutes ineffective assistance of counsel is cause, however ... as <u>Carrier</u>
> explains, `if the procedural default is the result of ineffective assistance of
> counsel, the Sixth Amendment itself requires that responsibility for the default be
> imputed to the state.' [quoting <u>Carrier</u>, 477 U.S. at 488]. In other words, it is not
> the gravity of the attorney's error that matters, but that it constitutes a violation of
> petitioner's right to counsel, so that the error must be seen as an external factor,
> i.e., `imputed to the state.'

<u>Coleman</u>, 501 U.S. at 753-54 (emphasis added).

As noted earlier, the standard for cause attributable to counsel is the constitutional

standard under the Sixth Amendment for attorney performance, i.e., whether counsel provided

"reasonably effective assistance," <u>Carrier</u>, 466 U.S. at 687, and counsel's performance must be

both inadequate and prejudicial to the defense. To the extent, state post-conviction counsel's

omissions caused claims not to be presented, such omissions cannot establish cause. <u>Coleman</u>,

501 U.S. at 756-57. Yet, "an ineffective assistance of counsel claim can itself be procedurally

21

defaulted, [but] the procedural default may be excused 'if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim.'" <u>Deitz v. Money</u>, 391 F.3d 804, 809 (6th Cir. 2004) (quoting <u>Edwards v. Carpenter</u>, 529 U.S. 446, 452 (2000)).

For these reasons stated, the Court concludes that Petitioner has not demonstrated cause for his defaults for his remaining claims about trial counsel in not presenting these claims to the State courts. The Court concludes that Petitioner has not established prejudice for those defaults.

For these collective reasons, the Court concludes that the petition for the writ of habeas corpus should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of January, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge